UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
UNITED STATES OF AMERICA,

            against

DEXTER ISAAC,

            Defendant-Petitioner.

**MEMORANDUM & ORDER**
98-CR-497 (MKB)
23-CV-4736 (MKB)

---------------------------------------------------------------

MARGO K. BRODIE, United States District Judge:

    On November 19, 1999, Defendant Dexter Isaac was convicted of seven counts of a nine-count Superseding Indictment, which included one count of murder for hire and one count of murder-for-hire conspiracy in violation of 18 U.S.C. § 1958, one count of Hobbs Act robbery in violation of 18 U.S.C. § 1951, and one count of using and carrying a firearm during and in relation to a crime of violence in violation of 18 U.S.C. § 924(c)(1). (Superseding Indictment ("Sup. Ind."), Docket Entry No. 13; Jury Verdict dated Nov. 19, 1999.) On March 28, 2000, U.S. District Judge Sterling Johnson Jr.[1] sentenced Isaac to life imprisonment on the murder for hire and murder-for-hire conspiracy charges to run concurrently with a term of twenty years of imprisonment for the Hobbs Act robbery charge and also sentenced him to a consecutive term of five years of imprisonment for the Section 924(c)(1) offense. (Am. J., Docket Entry No. 139.)

    On December 9, 2024, Isaac filed a motion for compassionate release and to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i); the Government opposes Isaac's motion.[2]

---

[1] The case was reassigned from Judge Johnson to the undersigned on October 12, 2022. (Order Reassigning Litig. dated Oct. 12, 2022.)

[2] (Def.'s Mot. for Compassionate Release ("Def.'s Mot."), Docket Entry No. 223; Gov't Opp'n to Def.'s Mot. ("Gov't Opp'n"), Docket Entry No. 225; Def.'s Reply to Gov't Opp'n to Mot. for Compassionate Release ("Def.'s Reply"), Docket Entry No. 226.)

For the reasons set forth below, the Court denies Isaac's motion.

I. Background

    a. **Isaac's conviction and sentencing**

On November 19, 1999, a jury found Isaac guilty of seven counts of a nine-count Superseding Indictment for his role in the murder for hire of Waleed Hammouda. (Sup. Ind.; Jury Verdict; Presentence Investigation Report ("PSR") ¶¶ 3–4, Docket Entry No. 176.) The jury found Isaac guilty of murder-for-hire conspiracy and murder for hire, both in violation of 18 U.S.C. § 1958; Hobbs Act robbery conspiracy and Hobbs Act robbery, both in violation of 18 U.S.C. § 1951; using and carrying a firearm during and in relation to a crime of violence, namely the Hobbs Act robbery and Hobbs Act robbery conspiracy crimes, in violation of 18 U.S.C. § 924(c)(1); and one count of witness tampering and one count of obstruction of an official proceeding, both in violation of 18 U.S.C. § 1512(b).[3] (Sup. Ind.; J. 1, Docket Entry No. 123.) According to the PSR, Isaac is a citizen of Trinidad who entered New York on September 6, 1975, and was retained under an Immigration and Naturalization Service Deportation Warrant. (PSR 1; *id.* ¶ 63.)

Judge Johnson sentenced Isaac on March 28, 2000 to terms of life imprisonment on the murder for hire and murder-for-hire conspiracy counts; twenty years of imprisonment on the Hobbs Act robbery and robbery conspiracy counts; ten years of imprisonment on the witness tampering count; ten years of imprisonment on the obstruction of justice count; and five years of imprisonment for using and carrying a firearm during and in relation to a crime of violence. (*See* Am. J.) Isaac's life sentences for murder-for-hire and murder for hire conspiracy were to run

---

[3] The Second Circuit affirmed Isaac's conviction on August 1, 2001. (Mandate dated Aug. 3, 2001, Docket Entry No. 149).

concurrently to the terms of imprisonment for Hobbs Act robbery and robbery conspiracy, witness tampering, and obstruction of justice and his five-year sentence for using and carrying a firearm during and in relation to a crime of violence was imposed to run consecutive to all other sentences.[4]  (*Id.*)

### b. Isaac's prior motion for compassionate release

On September 16, 2020, Isaac filed a motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), arguing that vulnerability to COVID-19 due to his preexisting medical conditions demonstrated extraordinary and compelling circumstances for release and that the section 3553 factors favored his release due to his rehabilitation while incarcerated.  (Mot. to Reduce Sentence / Mot. for Mercy to Avoid Death for a Reduced Term of Imprisonment for Immediate Release ("First Mot. for Compassionate Release"), Docket Entry No. 189.)  Judge Johnson denied the motion on January 11, 2021, holding that Isaac had failed to show that his correctional facility could not reasonably protect him from COVID-19 or manage his medical conditions ("January 2021 Decision").  (Jan. 2021 Decision 5–6, Docket Entry No. 198.)  Judge Johnson also concluded that given the seriousness of the offense and Isaac's pattern of criminal conduct, he remained a danger to community and found no reason to "upset its balancing of the [section] 3553(a) factors."  (*Id.* at 7.)

On December 2, 2021, Issac moved for reconsideration of Judge Johnson's denial of his motion for compassionate release.  (Mot. for Reconsideration of Mem. & Order Denying Petitioner's Mot. for Compassionate Release, Docket Entry No. 202.)  Isaac sought

---

[4]  The Court also sentenced Petitioner to a term of five years of supervised release for murder for hire and three years of supervised release for murder-for-hire conspiracy, Hobbs Act robbery and robbery conspiracy, using and carrying a firearm during and in relation to a crime of violence, witness tampering, and obstruction of justice, all to run concurrently.  (Am. J.)

reconsideration on the basis that he was sentenced before *United States v. Booker*, 543 U.S. 220 (2005), none of the section 3553(a) were considered, "many of the facts/claims" stated in his motion for reconsideration "were not set-forth in [his] previous filed motion," that Judge Johnson "failed to follow the clear language of [section 3582(c)(1)(A) as amended by First Step Act of 2018]," and the denial was "out of sync with a majority of [c]ircuits and harms those whose circumstances merit reconsideration" and "is not consistent with Congress' intent." (*Id.* at 5–7.) Isaac argued that (1) his medical conditions had worsened since his prior motion for compassionate release and raised concerns regarding the Delta variant of COVID-19, slow inmate vaccination rates, and lax enforcement of mask and distancing mandates, (*id.* at 7–9); (2) the court had authority under the First Step Act to reduce his sentence for the extraordinary and compelling reasons that he was sentenced pre-*Booker* to a term that was "unusually long for his crime," was held responsible for uncharged offenses that were not included in his jury conviction, and given a mandatory life sentence on account "of a trial penalty that resulted from his rejection of the government's plea offer," (*id.* at 4, 9–18); and (3) his "remarkable record of rehabilitation" showed that he would not be a danger to the public if released, (*id.* at 4).

On October 4, 2022, Judge Johnson denied Isaac's motion for reconsideration as untimely because Isaac filed it more than ten months after denial of his First Motion for Compassionate Release ("October 2022 Decision"). (October 2022 Decision 4, Docket Entry No. 210.) Judge Johnson concluded that even if the motion were not untimely, Isaac had failed to present a basis for reconsideration as he failed to present any matters or controlling decisions the court overlooked and raised new arguments, including the waning of the pandemic and his current vaccination status, that further supported the denial. (*Id.* at 4–5.) Judge Johnson also rejected Isaac's remaining arguments related to his original sentence as meritless, explaining that Isaac's sentence was not unusually long for the crimes of conviction, the imposition of his

4

sentence pre-*Booker* is not a basis for collateral relief, and Isaac presented no evidence to support his claim that he received a "trial penalty" for his life sentence. (*Id.* at 4–5.) Judge Johnson noted that even if Isaac had presented extraordinary and compelling reasons for a sentence reduction, the court maintained its prior determination that Isaac posed a danger to the community. (*Id.* at 5.)

On October 19, 2022, Isaac appealed the October 2022 Decision.[5] (Not. of Appeal, Docket Entry No. 211.) On April 12, 2024, the Second Circuit affirmed the October 2022 Decision and, in "[i]n light of [its] obligation to construe pro se submissions liberally," the Second Circuit reviewed the appeal "as a denial of an independent motion for sentence reduction rather than as an untimely motion for reconsideration" of Isaac's First Motion for Compassionate Release. *United States v. Isaac*, No. 22-2758, 2024 WL 1597614, at *1–2 (2d Cir. Apr. 12, 2024). The Second Circuit concluded that Judge Johnson had not abused his discretion because (1) he "permissibly determined that Isaac's argument for extraordinary and compelling circumstances had become less persuasive due to the waning of the pandemic and Isaac's own vaccination," (2) the decisions Isaac cited in his motion were cases where "judges exercised their discretion differently" but did not demonstrate that Judge Johnson's decision "fell outside of the range of what is permissible," and (3) although Isaac was sentenced pre-*Booker*, his "life

---

[5] While the appeal was pending, Isaac filed a fourth motion to vacate his conviction and sentence pursuant to Section 2255 on June 22, 2023. (Mot. to Vacate under 28 U.S.C. § 2255 ("Third 2255 Mot."), Docket Entry No. 179.) Because the motion was a second or successive Section 2255 motion, and Isaac did not obtain the necessary certification from the Second Circuit to file the motion, the Court concluded that it lacked jurisdiction to decide the merits and transferred the motion to the Second Circuit on February 1, 2024. (Mem. & Order dated Feb. 1, 2024, Docket Entry No. 221.) Isaac previously filed three motions pursuant to 28 U.S.C. § 2255 that were all denied. For a summary of the motions and their dispositions, see the Court's Memorandum and Order dated February 1, 2024 ("February 2024 Decision"). (Feb. 2024 Decision 3–4, Docket Entry No. 221.)

sentence was driven by a statutory minimum, not a Guidelines calculation or the sentencing court's exercise of discretion." *Id.* at 2.

On December 9, 2024, Isaac filed a second motion for compassionate release.

## II. Discussion

### a. Standard of review

"[O]ther than the limited exceptions provided by statutes . . . courts are not free to modify sentences at will." *United States v. Martin*, 974 F.3d 124, 135 (2d Cir. 2020); *United States v. Boyle*, No. 03-CR-970, 2024 WL 4836339, at *2 (E.D.N.Y. Nov. 20, 2024) ("A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." (quoting *United States v. Applewhite*, No. 17-CR-142, 2020 WL 7356615, at *3 (E.D.N.Y. Dec. 15, 2020))). "A district court may, in an exercise of its discretion, reduce an inmate's term of imprisonment by granting a motion brought under 18 U.S.C. § 3582(c)(1)(A) — the 'compassionate release' provision . . . ." *United States v. Van Der End*, No. 21-2079, 2023 WL 193633, at *1 (2d Cir. Jan. 17, 2023). "[T]here are three requirements that must be satisfied before a court can grant such relief" — namely, (1) "absent waiver or forfeiture by the government, an inmate must exhaust administrative remedies by requesting such relief from prison authorities"; (2) "a court must 'consider[] the factors set forth in [18 U.S.C. §] 3553(a) to the extent that they are applicable'"; and (3) "the inmate must demonstrate that his proffered circumstances are indeed 'extraordinary and compelling' such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A) and would not simply constitute second-guessing of the sentence previously imposed." *United States v. Keitt*, 21 F.4th 67, 71 (2d Cir. 2021) (per curiam) (alterations in original) (quoting 18 U.S.C. § 3582(c)(1)(A)); *see also, e.g.*, *United States v. Pimentel*, No. 23-7096, 2025 WL 783730, at *2 (2d Cir. Mar. 12, 2025) (quoting *Keitt*, 21 F.4th at 73); *Isaac*, 2024 WL 1597614, at *2 (similar); *United States v.*

6

*Barnett*, No. 21-2319, 2023 WL 2375684, at *1 (2d Cir. Mar. 7, 2023) (same); *United States v. Fox*, No. 22-10-CR, 2023 WL 379539, at *1 (2d Cir. Jan. 25, 2023) (same) (quoting 18 U.S.C. § 3582(c)(1)(A)(i)); *United States v. Davis*, No. 21-716, 2022 WL 1320316, at *2 (2d Cir. May 3, 2022) (citing *Keitt*, 21 F.4th at 71); *United States v. Jones*, 17 F.4th 371, 374 (2d Cir. 2021) (per curiam); *United States v. Cummings*, No. 20-3156, 2021 WL 4142844, at *1 (2d Cir. Sept. 13, 2021); *United States v. DiBiase*, 857 F. App'x 688, 688–89 (2d Cir. 2021); *United States v. Fernandez*, 853 F. App'x 730, 731–32 (2d Cir. 2021); and *United States v. Roney*, 833 F. App'x 850, 852 (2d Cir. 2020).

If a defendant cannot satisfy the applicable section 3553(a) sentencing factors, a district court "need not determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction." *Pimentel*, 2025 WL 783730, at *2 (quoting *Keitt*, 21 F.4th at 73); *United States v. Mayes*, No. 23-6077, 2024 WL 2990909, at *2 (2d. Cir. June 14, 2024) (same); *United States v. Wofford*, No. 22-2811, 2024 WL 1298468, at *2 (2d Cir. Mar. 27, 2024) (same); *Van Der End*, 2023 WL 193633, at *1 (same); *see Jones*, 17 F.4th at 374 (noting that because "extraordinary and compelling reasons are necessary — but not sufficient — for a defendant to obtain relief . . . , panels of this [c]ourt have, in non-precedential summary orders, assumed the[ir] existence . . . but held that a district court's 'reasonable evaluation of the [applicable] [s]ection 3553(a) factors' is 'an alternative and independent basis for denial of compassionate release.'" (quoting *United States v. Robinson*, 848 F. App'x 477, 478 (2d Cir. 2021))).

### b.    Isaac has failed to demonstrate that he exhausted his administrative remedies

Isaac argues that he has exhausted his administrative remedies because the Bureau of Prisons ("BOP") denied his request for compassionate release on July 30, 2024. (Def.'s Reply 1.)

7

The Government argues that the Court should "summarily dismiss" Isaac's motion because Isaac "offers no evidence that he took even minor steps toward exhausting his administrative rights" and there is no record of "any attempt by [Isaac] to seek an administrative remedy." (Gov't Opp'n 7.) The Government contends that "[c]ourts in this Circuit have held that a defendant's statement attesting to exhaustion, on its own, is insufficient to satisfy this requirement." (*Id.* (citing *United States v. Johnson*, 671 F. Supp. 3d 265, 271 (E.D.N.Y. 2023)).)

Section 3582(c) permits a defendant to file a motion for compassionate release after "the defendant has fully exhausted all administrative rights . . . *or* the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility." 18 U.S.C. § 3582(c)(1)(A) (emphasis added); *United States v. Haney*, 454 F. Supp. 3d 316, 321 (S.D.N.Y. 2020) (holding that section 3582(c)(1)(A) "requires the defendant *either* to exhaust administrative remedies *or* simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court"); *see also United States v. Monsalvatge*, No. 12-CR-586, 2025 WL 307137, at *4 (E.D.N.Y. Jan. 27, 2025) ("That is, the statute does not necessarily require the moving defendant to fully litigate his claim before the agency (i.e., the BOP) before bringing his petition to court. Rather, it requires the defendant either to exhaust administrative remedies or simply to wait 30 days after serving his petition on the warden of his facility before filing a motion in court." (quoting *Haney*, 454 F. Supp. 3d at 321)); *cf. United States v. Rounds*, No. 21-2686, 2022 WL 17684589, at *1 (2d Cir. Dec. 15, 2022) (holding that to satisfy section 3582(c)(1)(A), a "defendant must fully exhaust all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf," or 30 days must lapse "from the receipt of such a request by the warden of the defendant's facility" (alterations omitted) (quoting 18 U.S.C. § 3582(c)(1)(A))); *United States v. Reid*, No. 05-CR-5961, 2021 WL 837321, at *4 (E.D.N.Y. Mar. 5, 2021) (same).

Isaac has failed to provide evidence that he exhausted his administrative remedies before filing this motion. Isaac states that his administrative request was denied on July 30, 2024 and asserts in his reply that he attached the BOP's denial to his submission, (Def.'s Reply 1), but his submission to the Court did not include any attachments nor has he provided the date or any documentation supporting that he submitted a request to BOP. *United States v. Friedlander*, No. 20-CR-0441, 2022 WL 2305370, at *3 (E.D.N.Y. June 24, 2022) (denying motion for compassionate release for failure to exhaust administrative remedies "despite [the defendant's] assertion that on an unspecified date, he requested compassionate release from the [w]arden and has not received a response" because "'there [was] no evidence' that [the d]efendant made his compassionate release request [to have his sentenced reduced] to the warden, or otherwise began the process of seeking administrative relief, as is statutorily required" (emphasis omitted and fourth alteration in original) (quoting *United States v. Daley*, No. 89-CR-229, 2021 WL 327620, at *1 (E.D.N.Y. Feb. 1, 2021))); *cf. United States v. Martinez*, No. 03-CR-1049, 2022 WL 3019833, at *3 (E.D.N.Y. July 29, 2022) (accepting a copy of the defendant's dated "request for compassionate release" and the "[w]arden's denial of that request" as sufficient evidence of exhaustion). Isaac's statement that the BOP "denied [his] request for compassionate release on July 30, 2024," (Def.'s Reply 1), alone does not rebut the Government's argument that the record shows no evidence that he has satisfied the exhaustion requirement. *Daley*, 2021 WL 327620, at *1 (denying motion for compassionate release where "[a]part from [the d]efendant's uncorroborated representation, there is no evidence that [the d]efendant made his compassionate release request to the warden, or otherwise began the process of seeking administrative relief, as is statutorily required"); *United States v. Sosa*, No. 18-CR-229, 2020 WL 4252683, at *1 (S.D.N.Y. July 25, 2020) (denying compassionate release motion where the defendant claimed to have made a request with the warden of his facility but did not provide documentary evidence);

9

*United States v. Mathis*, No. 02-CR-891, 2020 WL 550645, at *1 (E.D.N.Y. Feb. 4, 2020) (denying a motion for compassionate release under section 3582(c)(1)(A) where no documentation of administrative exhaustion was provided).

Some courts, including this Court, see *United States v. Kissi*, 469 F. Supp. 3d 21 (E.D.N.Y. 2020), have found that under certain circumstances the administrative requirement may be waived, *see id.* at 27–29 (collecting cases), but none of those circumstances are present in this case. The circumstances for waiver include "where requiring a defendant to [exhaust] would entirely defeat the ability of the [c]ourt to grant relief," *id.* at 29 (alterations in original) (quoting *United States v. Valencia*, No. 15-CR-163, 2020 WL 2319323 (S.D.N.Y. May 11, 2020), at *4), and "where a recognized exception to exhaustion applies," including where "exhaustion may be unnecessary where it would be futile, . . . the administrative process would be incapable of granting adequate relief," or "pursuing agency review would subject plaintiffs to undue prejudice," *id.* (quoting *United States v. Perez*, 451 F. Supp. 3d 288, 292 (S.D.N.Y. 2020)). None of the exceptions to exhaustion are present here. First, there is no indication that requiring Isaac to demonstrate exhaustion would defeat the ability of the court to grant relief or would be futile as Isaac is serving a life sentence and thus is not anticipating a pending release. *Cf. United States v. Cohen*, No. 17-CR-0372, 2020 WL 3960513, at *2 (E.D.N.Y. July 13, 2020) (waiving exhaustion requirement on futility grounds because defendant's anticipated release date was within two months of the court's decision on his motion). Nor has Isaac stated reasons to find that the administrative process would not be capable of granting adequate relief or that he would be unduly prejudiced. Moreover, Isaac is aware of the requirement as indicated by his, albeit unsupported, statement of compliance in his motion. *See United States v. Pickney*, No. 16-CR-656, 2025 WL 835868, at *2 (S.D.N.Y. Mar. 15, 2025) (declining to waive exhaustion requirement for the defendant's motion for compassionate release because there was no "factual

10

basis to conclude that it should be waived" where the defendant asserted that he had submitted a request, indicating his awareness for the requirement, and provided no basis for exhaustion).

Because the Government argues that Isaac has not exhausted his remedies, Isaac has provided no evidence to the contrary, and no circumstances exist warranting waiver of the exhaustion requirement, the Court denies Isaac's motion for failure to exhaust administrative remedies. *See United States v. Robinson*, No. 10-CR-789, 2022 WL 16924176, at *3–4 (E.D.N.Y. Nov. 14, 2022) (denying motion for compassionate release where the defendant asserted that he satisfied the exhaustion requirement, the government countered that "the BOP has no record of any such request and dispute[d] that [the defendant] exhausted his administrative remedies" and the court could not "at present verify that [the defendant] has exhausted his administrative remedies" and found no exceptional circumstances warranting waiver of the exhaustion requirement), *aff'd*, No. 23-6150, 2024 WL 4262955 (2d Cir. Sept. 23, 2024).

    c.    **The section 3553(a) factors do not favor release**

In addition to failing to demonstrate that he has exhausted his administrative remedies, the section 3553(a) factors continue to counsel against release and the Court therefore denies Isaac's motion for compassionate release. *Pimentel*, 2025 WL 783730, at *2 (explaining that "a district court . . . 'need not determine whether the defendant has shown extraordinary and compelling reasons that might (in other circumstances) justify a sentence reduction'" where a defendant cannot satisfy "the applicable [section] 3553(a) sentencing factors" (quoting *Keitt*, 21 F.4th at 73)); *Robinson*, 2024 WL 4262955, at *1 (affirming dismissal of compassionate release motion solely on basis that the section 3553(a) factors weighed against relief); *United States v. Halvon*, 26 F.4th 566, 571 (2d Cir. 2022) (finding that the district court "did not err in denying [the defendant's] compassionate release motion 'in sole reliance on the applicable § 3553(a)

11

sentencing factors' rather than also determining whether [the defendant] had shown extraordinary and compelling reasons" because "[s]uch a process satisfies the requirements of § 3582(c)(1)(A) and conforms with [the Second Circuit's] precedent" (citations omitted)).

Isaac argues that the section 3553 factors favor his release because (1) despite the seriousness of his offense, "the considerable time he has served — over [thirty] years — has fulfilled the punitive and deterrent objectives of his sentence," "[h]is exemplary behavior[]" and BOP progress report "further indicate[] that he no longer poses a risk to society," and he "acknowledges his past actions and has taken full responsibility for his crimes," (Def.'s Mot. 5; *see id.* at 8; Def.'s Reply 2); (2) his "rehabilitation, advanced age, and commitment to personal improvement suggest a very low risk of recidivism," "[h]e no longer poses a danger to the community," and "[he] has a secure plan for reintegration" with "[f]amily and community support . . . in place to aid his rehabilitation," (Def.'s Mot. 5, 8); (3) his continued "incarceration would create an unwarranted sentencing disparity compared to similarly situated individuals who have been granted release," (*id.* at 5–6), including as compared to a defendant in a case distinguished by the Government, where an inmate was "granted release for aiding 300 inmates" while he has "mentored over 400 inmates and organized a recovery program," (Def.'s Reply 4); (4) the "harsh conditions" of his confinement, including "severe lockdowns, staffing shortages, and limited access to essential services . . . have worsened with COVID-19" and "amount to a deprivation of constitutional rights" under the Eighth Amendment, (Def.'s Mot. 6); (5) upon release, he "faces a pending immigration detainer with deportation proceedings" which "fully mitigates any risk of him posing a danger to the public within the United States" since "he will be removed from the jurisdiction and control of U.S. society" and "will not have the capacity to re-enter U.S. society or engage in any conduct that might affect the safety or well-being of the

public,"[6] (*id.* at 6–7; *see* Def.'s Reply 3).

The Government argues that Isaac's motion should be denied because (1) the "motion regurgitates arguments that have already been fully adjudicated, including those related to the COVID-19 pandemic," (Gov't Opp'n 1), (2) "rehabilitation and 'model prison conduct is expected' of federal inmates" and therefore Isaac "should not be granted compassionate release on this basis," and notes that unlike the defendant in *United States v. Tellier*, No. 92-CR-869, 2023 WL 5498909, at *1 (S.D.N.Y. Aug. 25, 2023), who provided over thirty letters in support of his release, Isaac stated he has "become a model of reform and leadership" without offering "any supporting documentation, evidence, certificates, or information to support this broad claim," (*id.* at 7–8); (3) Isaac's "generalized allegations related to the COVID-19 pandemic and its effect on his conditions of confinement" do not "articulate a present confinement issue of such a nature to warrant his release" and to the extent the "pandemic has made prison conditions harsher than usual, those are circumstances that all inmates have had to endure," (*id.* at 9); and (4) "the seriousness of [Isaac's] offenses cannot be overstated" and he remains a danger to the community, (*id.* at 9–10); and (5) "the Court should not and cannot rely on the *possibility* that his post-release deportation would quell the real public safety concerns [Isaac] poses" in light of "the uncertainties with respect to [his] immigration status and any immigration relief he may claim in the future," (*id.* at 10).

Isaac has advanced no arguments that convince this Court that his release is warranted

---

[6] Isaac also argues that the November 1, 2023 amendments to the U.S. Sentencing Guidelines including Amendments 814 and 821 "explicitly allow courts to grant compassionate release based on 'unusually long sentences' and "non-retroactive changes in law." (Def.'s Reply 3–4.) These arguments are unavailing because, as explained by the Second Circuit, Isaac's "life sentence was driven by a statutory minimum, not a Guidelines calculation or the sentencing court's exercise of discretion." *United States v. Isaac*, No. 22-2758, 2024 WL 1597614, at *2 (2d Cir. Apr. 12, 2024) (citing 18 U.S.C. § 1958(a)).

13

under the section 3553(a) factors. The Court acknowledges the documentation that Isaac previously submitted in support of his First Motion for Compassionate Release that he points to in his current motion, (Def.'s Reply 2); recognizes the strong family and community support he would have if released, (Def.'s Mot. 8); and applauds Issac's "rehabilitation accomplishments" as demonstrated by his certificates, support and character letters, and his statement that he "mentor[ed] [] over 400 inmates dealing with addiction and mental health issues," (Def.'s Reply 2). The Court is also mindful of Isaac's "advanced age[]" of approximately 61 years old and "commitment to personal improvement" and the severe prison conditions that he, and other inmates, have had to experience even as the COVID-19 pandemic has waned. (Def.'s Mot. 5–6.) However, none of these considerations warrant a modification of his sentence in light of the seriousness of his offenses. As Judge Johnson recounted in denying Isaac's First Motion for Compassionate Release:

> Isaac shot the victim, Waleed Hammouda, twice in the head as Hammouda prayed in the street. Isaac did so in exchange only for property and any cash he could take from Hammouda. Isaac's conduct was not aberrational. Rather, it was part of a pattern of criminal activity that persisted after his arrest. Previously, [Isaac] was in the business of stealing and using fraudulently obtained credit cards. At the same time Isaac and his associates also robbed a competitor and his wife at gunpoint. [Isaac] continued his criminal behavior after his arrest. Isaac tried to obstruct justice at every turn. [Isaac] made threatening phone calls to potential informants, instructed his girlfriend to destroy evidence, and personally intimidated a cooperating witness to avoid facing the consequences of his criminal behavior.

(Jan. 2021 Decision 6–7.) The statutorily-mandated life sentence that Judge Johnson imposed plainly "reflect[s] the seriousness of the offense, . . . promote[s] respect for the law, . . . provide[s] just punishment for the offense, and "afford[s] adequate deterrence to criminal conduct." 18 U.S.C. § 3553(a)(2)(A); *see United States v. Epskamp*, No. 12-CR-120, 2025 WL 1726967, at *3 (S.D.N.Y. June 20, 2025) (denying motion for compassionate release while

14

"mindful of [the defendant's] advanced age and accompanying health conditions, as well as the severe prison conditions that he and others experienced during the COVID-19 pandemic," the letters submitted on his behalf, and the defendant's "productive activities while in prison" because "the[] considerations pale[d] in comparison to the enormous harms associated with his crimes and [the defendant's] heightened culpability in light of his serious . . . criminal history"); *U.S. v. Duarte*, No. 99-CR-192, 2025 WL 1434886, at *7 (S.D.N.Y. May 19, 2025) (finding unpersuasive the defendant's argument for compassionate release on the basis that his family members and friends would "provide support upon his re-entry[]" because the defendant did not present the "rare situation[]" where "family circumstances" could warrant relief as he "was fully an adult" when he committed the offense of ordering the murder of a government informant and was "not the only person able to care for any particular dependent family member"); *see also United States v. Robinson*, No. 21-1865, 2022 WL 2204126, at *3 (2d Cir. June 21, 2022) (holding that the district court did not abuse its discretion in finding that the defendant's "rehabilitation . . . was insufficient to justify relief"); *United States v. Garcia*, No. 21-1181, 2022 WL 2154675, at *2 (2d Cir. June 15, 2022) (affirming denial of compassionate release where the district court acknowledged the defendant's commitment to rehabilitation but concluded that his criminal history and the seriousness of his crime counseled against release); *United States v. Reyes*, No. 20-3285, 2022 WL 1669388, at *1 (2d Cir. May 26, 2022) (affirming denial of compassionate release where the "court acknowledged [the defendant's] efforts toward rehabilitation, [but] nevertheless found that the section 3553(a) factors weighed heavily against a sentence reduction" in light of the defendant's conduct); *United States v. Williams*, No. 22-4156, 2022 WL 1554649, at *2 (2d Cir. May 17, 2022) (affirming denial of compassionate release where "[t]he district court held that [the defendant] was not entitled to a sentence reduction under the [section] 3553(a) factors because of the seriousness of his offenses and because the danger to

15

the community outweighed any rehabilitative attempts, given the severity of his offenses which included," *inter alia*, murder); *Cummings*, 2021 WL 4142844, at *2 ("While we commend [the defendant] for his efforts at self-improvement while incarcerated, we conclude that the [d]istrict [c]ourt did not abuse its discretion when it considered these points and still found that the [s]ection 3553(a) factors weighed against release.").

Isaac raises for the first time that mandatory deportation upon release mitigates any possible danger he would pose to the community, but this argument is unavailing in light of the seriousness of his conduct, including murder for hire that alone carried a mandatory sentence of life imprisonment or death when death results from the crime. 18 U.S.C. § 1958(a) (1996). Moreover, Isaac points out that he is classified as a "violent criminal alien," (Def.'s Reply 3), which only underscores the violent nature and seriousness of his prior criminal conduct. *See United States v. Chen*, No. 22-765, 2023 WL 2229367, at *1–2 (2d Cir. Feb. 27, 2023) (finding no abuse of discretion in district court's denial of compassionate release where the defendant argued he would face mandatory deportation if released from serving his life sentence because the record established the seriousness of his underlying conduct of, *inter alia*, murder); *United States v. Paulino*, No. 18-CR-173-2, 2025 WL 2070822, at *2 (S.D.N.Y. July 23, 2025) (rejecting as "absurd" the defendant's argument that his "post-carceral deportation" would "remove[] any threat he may pose to the community" because if the "logic were reflected in the law, it would effectively grant illegal aliens who commit crimes in this [c]ountry a 'get out of jail free' card" and also "ignores the key fact that deportation, as 'a form of punishment itself,' is considered by courts at the time of sentencing, and thus cannot serve as a basis for early release"); *United States v. Romero*, No. 88-CR-642, 2025 WL 1144712, at *6 (S.D.N.Y. Apr. 17, 2025) (denying compassionate release despite the defendant's status as a nonresident alien and desire to be deported to the Dominican Republic on release because "the seriousness of [the

16

d]efendant's conduct require[d] that he serve a life sentence" as his offense conduct "came within millimeters of taking a human life"); *see also United States v. Herrera-Umanzor*, No. 10-CR-74, 2025 WL 2240424, at *2 (E.D.N.Y. Aug. 5, 2025) (rejecting the defendant's argument that his "deportation to El Salvador upon completion of his sentence constitute[d] an extraordinary and compelling reason for a reduction in his sentence" for "participating in a murder").

### III. Conclusion

For the foregoing reasons, the Court denies Isaac's motion for compassionate release and to reduce his sentence.

Dated: September 5, 2025
       Brooklyn, New York

SO ORDERED:

\_\_\_\_\_/s/MKB\_\_\_\_\_
MARGO K. BRODIE
United States District Judge
